The Honorable, the judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez, all persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to give their attention to the court of not sitting. God save the United States and this Honorable Court. Good morning, my name is Diana Motz and you can see me and you can see Judge Agee and our colleague Judge King is just on the phone, but he's very much with us. We're happy to have you with us. Our first case, we'd like to hear argument in the State of North Carolina v. the United States. Ms. Boyce. Thank you, Your Honor, and may it please the court. My name is Sarah Boyce, counsel for the State of North Carolina. Congress passed the two statutory provisions at the heart of this appeal for the express purpose of empowering states to enforce federal compliance with air pollution laws. For years, federal facilities had undermined the state's environmental efforts and Congress was determined to put a stop to their recalcitrance. To accomplish that goal, Congress took two steps relevant here. First, Congress added a clause to the citizen supervision that precludes removal and allows states to keep enforcement actions against the United States in state court. Second, Congress broadly waived the federal government's sovereign immunity from all remedies and sanctions, including punitive fines. This intention is clearly communicated in the plain text of two different provisions and it is confirmed repeatedly in the act's legislative history. The court below flouted the clear text of these two Clean Air Act provisions and for that reason, it should be reversed. I'd like to start with removal since that's a threshold issue for the court and before I dig into that, I'd note that the statute I'm about to discuss is at pages 22 and 23 of the addendum to the state's brief. I found that talking about this statute in the abstract can be a little complicated so just note those pages for the court. The United States argues that subsection E of 7604 does not preclude removal because in the United States' view, this provision is nothing more than a savings clause. That view is mistaken for three primary reasons. First, it confuses distinct provisions within subsection E. Second, it fails to give effect to portions of subsection E's text. And third, it's inconsistent with a specific versus general canon of construction. Can I ask you a question? I hear you with regard to the language of the statute. It does not expressly say that the federal government cannot remove. You would agree with me there, right? Of course. Right. Can you point to any other statute that implicitly carves out an exception to the federal office of removal statute? That does not explicitly carve out an exception or that does? That implicitly carves it out. We'd agree that your position is this implicitly carves it out. Carves out an exception. Yes, Your Honor, that's correct. No, Your Honor, as far as the United States is aware, there are only two provisions that use this method of precluding removal. Those being this, the Clean Air Act and the Safe Drinking Water Act. But I would note two things in response to your question. The first is that there are, of course, two primary removal statutes for the federal government, the first being 1441 and the second being 1442. And whereas 1441 expressly requires that Congress preclude removal in express terms, it contains no such requirement asking or stating that Congress must preclude removal in express terms, so the courts have drawn a distinction between those two statutes in terms of the specificity with which Congress must speak. So that would be my first point. Secondly, I think this court can perhaps draw some comfort in the fact that these kinds of removal provisions are so rare, being only in the Clean Air Act and the Safe Drinking Water Act, because I think some of the United States' concerns about the federal government being unable to remove at a wide swath of cases and being unable to present these various sovereign immunity defenses in federal court is minimized based on the admitted idiosyncrasy of this provision. Counsel, if I could inquire, is the Safe Drinking Water Act you're referring to part of the Clean Water Act? No, Your Honor. These are separate statutes that were enacted at different times, but were enacted at the same time that Congress was engaging in all of these different 1977 revisions. If I'm remembering correctly, the Clean Water Act has a specific removal provision in it. That's correct, yes. So the Safe Drinking Water Act is a distinct statute from the Clean Water Act. The Clean Water Act expressly precludes removal, or excuse me, expressly allows for removal, says that the state cannot stop removal from happening, whereas both the Safe Drinking Water Act and the Clean Air Act contain no such provision. So we would submit that Congress's deliberate inclusion of a provision addressing removal in the Clean Water Act signals that in the Clean Air Act, it did not similarly intend to allow. There was a provision proposed for the Clean Air Act similar to the one in the Clean Water Act, which was not adopted. So what significance do you give to that? Your Honor, we agree with the Ninth Circuit, which, as I'm sure you know, interpreted that to mean that the removal provision would have been redundant and duplicative and through from Congress's decision to remove it, that it had decided not to be superfluous. Obviously, the United States has a different interpretation of the omission of the provision. But what we do think is clear based on that is that Congress had removal in the back of its mind when it was revising this provision, such that any argument that the language about any law of the United States, perhaps not referencing the removal statute, becomes more far-fetched. We know that Congress was contemplating both removal and sovereign immunity as potential problems or potential defenses or responses that the federal government might raise. And thus, we think that bolsters the state's argument that any law of this particular subsection should be meant to reference, should be construed to reference those federal statutes. And I'm sorry, I did not not sure I quite understand your answer to my question. Is it your submission that these other statutes that you say, the Safe Drinking Water Act, etc., contain an implicit provision like this? Yes, Your Honor. So the Safe Drinking Water Act contains virtually identical language to this particular subsection E. And those are the only two provisions like this. It has been held to bar removal? No. No, Your Honor, I'm not saying that. I will concede that I'm not aware of any statute that has been held to say that. I was simply noting that these provisions or acknowledging that these provisions are idiosyncratic and offering that perhaps that's a response to the concern that interpreting these provisions, as the state suggests, would sweep a wide range of cases into the state courts instead of the federal courts. And while I just want to be sure you don't have some other case that interprets one of these statutes as giving, as speaking to this removal issue, do you? Aside from the Ninth Circuit case. No, but that's the same. OK, thank you. Yes. The other thing that I would note, one of the primary concerns that the United States raises in its brief is the risk that precluding removal in this case will mean that sovereign immunity is adjudicated in disparate state courts all across the land and that that is inconsistent with Congress's intent in revising the officer removal statute in 1996. But with respect, as I will turn to in a second, Congress believed in 1977 that it was broadly waiving sovereign immunity. The Congress of 1977, I submit, would be very surprised to learn that now, 50 years later, the United States was still coming up with creative ways to evade the broad sovereign immunity waiver that Congress thought it was enacting. So, of course, disparate sovereign immunity rulings in state courts can only be a reason that the United States is raising sovereign immunity and Congress made extremely clear in amending the Clean Air Act that it no longer expected the federal government would be raising those kinds of sovereign immunity defenses. It expected that it was broadly waiving sovereign immunity for all sanctions, including the one at issue. So is your argument that removal is not permitted because sovereign immunity has been waived? I was a little confused by your most recent statements. No, Your Honor, it's not that removal is precluded because sovereign immunity has been waived. It's that the United States points out that Congress, in amending the federal officer removal statute, stated that one of its concerns or one of its purposes was to make sure that sovereign immunity as a defense was adjudicated in the federal courts. It wanted to make sure that when the United States raised sovereign immunity as a defense, state courts across the country were not coming to different conclusions about the scope of certain waivers and some saying punitive fines were allowed and other state courts saying punitive fines were not allowed. And I was simply pointing out that given that Congress believed it had broadly waived sovereign immunity, it would not have anticipated that in state courts, the United States would even be raising sovereign immunity as a defense and that that would mitigate any concern about disparate state court rulings, because, of course, you can't have disparate state court rulings about sovereign immunity if sovereign immunity is not raised as a defense in the first place. But these are two completely different issues, removal and immunity, are they not? They stand independently. We have to look at them independently. I think that's right, Your Honor, though. I would of course note that. Where did you all start this lawsuit, in Craven County? Yes, Your Honor. And how many counties are there in North Carolina? One hundred. Now, I remember asking that in a criminal case one time, and I think I got the same answer. So a hundred different counties. So the United States could end up defending in the District of North Carolina lawsuits in a hundred counties. Correct, if you're right. Yes, Your Honor, that's correct. As a practical matter, so to initiate them in the, what, the Superior Court? Yes, Your Honor. OK. And the United States Attorney for Eastern North Carolina is in Raleigh, correct? Yes. And so he probably has 40 or 50 counties, and he has a real big district. He'd be litigating all over Eastern North Carolina, rather than just going on the elevator down to a different floor in Raleigh to litigate. Yes, Your Honor. If you're right, he's going to have to travel all over the district to litigate. And then he could raise, you're saying he could raise this immunity issue, or try to, but you say he'd do this on that too. But just on the removal issue, your position would have the United States litigating separately in every county, not just in North Carolina, but in the United States of America. Yes, Your Honor, that's correct. The upshot of our opinion, of our position would be that the United States has to litigate this in different state courts. But respectfully, Congress's concern in expanding the federal officer removal statute was never expressed to be one of convenience, to my knowledge. It was about uniformity in terms of federal defenses. And that's where my point comes in, about Congress's expectation. Well, it wouldn't be to be uniformity rulings. You could have a hundred different judges in North Carolina ruling on these issues. And then it could very well rule differently, and it could go to the court of appeals, and there's some important issues, but you've got to get the federal issue resolved in North Carolina. Yes, Your Honor. Yes, Your Honor, that's correct. There could be, there will be different rulings in the state. But again, if sovereign immunity is not raised as a defense, as Congress expected, then there's no risk of that with respect to the sovereign immunity issue. If I may, though, I'd like to- No, but the other issues, the non-immunity issues would be raised and subject to different rulings in the different superior courts of the various counties, all over North Carolina, not just the Eastern District, but in all of the United States of America, in the state courts. That's true, Your Honor. The reason they stopped these removal statutes, I recall, I used to be in one of these U.S. attorney's offices, we removed all kinds of things, was to give the government, the federal government, the opportunity to get in the federal court. And the uniformity that came from it. That's true. That's true, Your Honor. That is certainly a concern of Congress's. If I may, I'd like to move on to the sovereign immunity piece and address briefly the Department of Energy. Before you do that, counsel, I thought one of the main thrusts of your argument with respect to removal was the obtaining any judicial remedy in state court language, and you hadn't addressed that yet. Is that, are you waiving that argument or do you still think that's valid? No, Your Honor. We certainly think that that textual argument bears. From a purely textualist perspective, the fact that Congress used the word obtain is significant and the United States has continued to fail to put forward any explanation as to what it means to obtain judicial remedies in a state court, if the United States is capable of removing. So we would certainly still maintain that position. And we would also note that the United States has failed to identify what is in fact referencing if removal is off the table and sovereign immunity is off the table. So in adding that language to the statute, the state would argue that that means something and that the straightforward textual understanding of that is that it references both the removal statute and the doctrine of sovereign immunity. If I may, I'd like to quickly move to sovereign immunity more broadly, though, and take on the Department of Energy decision, which I think we can all agree is the biggest obstacle to the state's position. Well, can I ask you this, and I'll give you a little extra time because I know we've used up a lot of your time, and I'll give us some equal time to go. But if you are incorrect with respect to the removal issue, the federal court below had no jurisdiction, correct? If I'm correct, yes, that's correct. If I'm correct about removal, this case needs to be remanded to the state court and the state court will decide the sovereign immunity question. Well, how could it decide the sovereign immunity question when the federal government, and you're saying the federal government has to intervene to assert sovereign immunity? No, the federal government is the defendant in the state court case as well, and presumably will raise sovereign immunity as a defense in state court as well, and then the state court will adjudicate sovereign immunity just as the federal court did. Okay, all right. So turning back to the Department of Energy decision, that decision does not control this court's reasoning for several reasons. First, of course, as the United States has acknowledged, the Clean Water Act contains no companion provision like the citizen supervision that we've been discussing here. So the Supreme Court's careful textual analysis from Department of Energy simply has nothing to say on how the text of subsection E should be interpreted. That text is extremely clear and waives the United States sovereign immunity from all remedies and sanctions, and the United States has not attempted to argue that remedies should not naturally be understood to encompass punitive fines as well as coercive penalties. In addition, the Supreme Court in Department of Energy looked broadly at the statutory scheme of the Clean Water Act and noted that in the Clean Water Act, Congress had been careful in some provisions to exempt the United States from suit or from certain penalties and in others had not. That is not the case with the Clean Air Act. In the Clean Air Act, the United States is broadly swept in as being subject to a wide range of penalties and fines, both in the statutory provisions that the state has raised specifically in this case and in other provisions. So I would direct the court both to- Counsel, let me ask you a more direct question about what could be seen as a 7604E, the statute, it does say nothing in any law of the United States shall prohibit, but then it adds that sentence at the end for requiring compliance by the United States in the same manner as non-governmental entities, see section 7418. But 7418 appears to me to have that same process and sanctions terminology that existed in the Ohio case. So why isn't that the same limit here as it was in Ohio? Stepping back, your honor, I think it's helpful to look at these two provisions as very much working in tandem. So 7418 is the provision that imposes this requirement that the federal government comply with requirements that the state has set to the same extent as private parties. 7604 is the mechanism that states and other private citizens use to enforce those requirements and those standards. So I do think it's useful to look at them in tandem, but I don't think that the language in 7418 is the only language that this court can look to. I think that the language in subsection E is extremely clear in waiving sovereign immunity. Of course- 7604E, at the end of subsection E, it incorporates 7418 and it says requiring for the provisions requiring compliance by the United States, see section 7418. And what I guess I'm asking is that if 7418 applies to limit or give body to the rights in subsection E, why wouldn't the same limiting language in 7418 apply here as it did in Ohio? A few different responses, your honor. First, the language in 7418 is not exactly the same in the Clean Air Act as the Clean Water Act. There is a specific sentence in the Clean Water Act that the Supreme Court examined that specifically limits the United States immunity and addresses the fact that the United States should only be held liable for penalties to enforce injunctive relief, which is exactly the kind of limit that we're looking at here. There is no comparable provision in the text of the Clean Air Act. There isn't any specific limitation on the United States liability. So that would be one reason that would counsel in favor of a different reason. I was going to give you five minutes and you're almost done, so maybe you can wrap it up. Sure, sure. Your honor, Judge Agee, I do think that while these provisions work in tandem, the first part of that provision that we've been discussing, 7604, that says specifically that the United States can be sued by the state to enforce its air pollution laws is a clear waiver of sovereign immunity that's completely separate from the sentence that follows it, cross-referencing it. Of course, in many federal statutes where courts have held that sovereign immunity has been waived, the way that Congress has done that is by expressly making clear that the United States is subject to suit and subject to specific penalties. And that's what this text does here. So I'll stop and reserve whatever time I'm able to have for rebuttal. Thank you very much. You can keep your rebuttal time. I'm going to give the government five and a half minutes extra if they want it right now. I'd be happy to hear from you, sir. I'm Chief Court, Robert London representing the United States. I will go ahead and start with removal and just dive in there. One thing opposing counsel did not mention is the standard for removal. When we're talking about 1442A, the Supreme Court in the Watson case explained that it is to be liberally construed. So we're starting from a default here where the removal statute should have a liberal construction. And when we apply that and look to the argument that the state is making about taking that away, it falls short. First, as the court mentioned, the removal of the 7604E in the Clean Air Act just doesn't mention removal. So we're starting with a statute that doesn't directly address removal. Second, also as the court recognized, the legislative history here, removal was on the table. The original, one original version of the bill said it was going to prohibit removal by the federal government. And the conference report, as we explained in our brief, said we're dropping that. So we had for a brief moment, it looked like a statute that was going to say no removal, and then we didn't. And the broader picture here is it's sensible for this issue to proceed in federal court. It's an issue of federal sovereign immunity. Obviously the federal courts and fourth circuit deals with that all the time. And it's just makes more sense to read these statutes as leaving that issue to be decided post removal in federal court, rather than in, for example, 100 counties in North Carolina. I learned a new fact today. Jacksonville case in the 11th circuit, you know, looked at this carefully and we think got it right. It did walk through the arguments essentially that North Carolina is now making and rejected them. So we think the court should be guided by that Jacksonville decision, rather than the decision on the ninth circuit in the Sacramento case. I was just going to say the problem in this case is that on either issue, whichever way you go, you have at least one court of appeals that's going to back you up. Right. I mean, it's 1-1 right now. You know, we think the Jacksonville decision is better reasoned. We think it makes the points about there's no mention of removal here. You know, adding on to that, there are plenty of statutes. We cite them in our brief that expressly address removal. So for example, 28 USC 1445 says the United States can't remove. And so we don't have that here. And I think that goes a long way to defeating North Carolina's argument. Well, what I asked, can I ask you the question I asked your colleague? Are you familiar with any other statute that implicitly or certainly implicitly carves on exception to the removal statute? I'm not familiar. I'm not familiar with any other statute that a court has held implicitly blocks this federal officer, federal agency removal. I think counsel has it exactly right. You know, the two similar statutes are the Clean Air Act. We're talking about it now. In 7604E and then the Safe Drinking Water Act. And I looked and I don't think either party has cited any Safe Drinking Water Act cases. I don't think there's any cases addressing it one way or another in that context. And we've already talked about the cases that address removal in this context. So I don't think there's an answer to that. I do think that, you know, you're not to the extent you're finding an implicit. Well, I think it's marginally better reading of the statute that maybe it blocks removal. That, I think, does run into what the Supreme Court said in Watson, which is the removal statute should be liberally construed. This removal statute, federal officer, federal agency removal statute specifically. So even if you can kind of squint and find maybe an implicit stripping of removal, that's not good enough. I think it needs to be more than that. And it's not here. You know, as I think came up very briefly in the brief, North Carolina really focuses on the word obtaining in 7704E and says, well, we have to be able to obtain the remedy here. And that can't be done with removal. But I think on this point, the Supreme Court's opinion in Brewer is important. It looked at the word maintaining in the Fair Labor Standards Act and said, no, we're not going to read maintaining to mean you get to maintain the lawsuit all the way to the end. And I think it's a parallel argument really makes sense here with the word obtaining under the Clean Air Act. And so I think for all those reasons, I think the removal point is it really, removal makes sense here. And the statute just doesn't, the Clean Air Act in 7604E doesn't take it away. I saw Judge Cheney pop up, so I stopped in case he had a question. I'll go ahead and go on. The other main argument is sovereign immunity here. But I'm happy to answer any questions about removal before I go on to that. Because removal is proper, we think then this court and the district court properly moves on to the issue of sovereign immunity. And again, the state didn't mention the standard here. And it's, I think, really close to being dispositive here. Any waiver of sovereign immunity must be, quote, unequivocal. And that's been stated in a bunch of places, but the most relevant here, Department of Energy versus Ohio. And ambiguities are construed in the government's favor. And at the end of the day, there is an ambiguity, then it's not an effective waiver of sovereign immunity. You know, in the opening brief, North Carolina started with 42 U.S.C. 7418, and we think that analytically makes sense because that does have a waiver of sovereign immunity. The problem with pointing to that waiver is it's indistinguishable from the waiver that, in the Clean Water Act, that the Supreme Court addressed in Department of Energy versus Ohio. And there, the court very carefully walked through the language. And at the end of the day, said it does not waive sovereign immunity for this relief. Well, how about looking at 7604? Yes. So if 7418 doesn't waive, then the next place they look to is 7604E. And again, that doesn't include the unequivocal, unambiguous waiver that's required. Yes, but very, very clearly differs from the language that the Supreme Court was interpreting. Remember, the Supreme Court said, explained that because process limits the reach of the phrase process and sanctions to coercive civil penalties. That's what it relied on. And in that case, the court noted that the statute issue expressly limits civil penalties. Here, process isn't married with sanctions and it doesn't expressly limit civil penalties. And those were the two things that the court relied on. Right. That's why I think that, just to be clear, that is, you know, that with respect to 7418, that's the same language. And so, but moving on. I thought we were talking about 7604E. I am. I just want to be clear that we were doing that. So moving on to 7604E, we're all on the same page. It doesn't, it doesn't first have the affirmative waiver that we're looking for. It's a savings clause. Is it your position, is it the government's position that you have to have some magic language about affirmative waiver? Because that isn't the kind of analysis that the Supreme Court did in DOE, is it? I don't think there's any one framing that gets you a waiver of sovereignty. That said, I don't know of a court finding outside this context, what is a savings clause that reiterates twice that it's not taking away other rights, waives sovereignty or is an unambiguous, unequivocal waiver. If you look at 7604E in context, there's two other points. One, I'll just jump to the end because it came up in the opening argument. But as Judge Agee was pointing out, at the end of 7604E, it points back to 7418 for provisions requiring compliance by the United States, et cetera, in the same manner as non-governmental entities. See section 7418 of this title. And there we have the- Yes, but as Judge Agee, I think, also reminded counsel, the Seventh Circuit said that it simply reminds the reader that 7418 defines the United States' burden to comply with state laws. Right. And I think in defining that burden, it includes the required clear waiver of sovereign immunity, just not one that goes far enough to help the state queue. The other point is, I think, if you look in 7604 in context, in the whole, it's clear that E is not a permanently waiving sovereign immunity. 7604A includes the citizen supervision that does waive sovereign immunity for citizen suits in federal court. And the state could have brought such a claim, but did not. And third party, non-governmental entities can bring that too. Then you have a bunch of provisions addressing venue, other matters relating to the citizen supervision. And then you get to E, and the title of E is non-restriction of other rights. So the thrust of the language that follows, the two negatively phrased, nothing in this section shall restrict provisions, or nothing in this section or any other law of the United States shall be construed to prohibit, are making clear that, look, just because we gave, Congress is saying, look, we granted a citizen supervision, but in doing so, we're not saying we're taking away other rights remedies that you might have. But that's not the same thing as then saying, and by the way, we're waiving sovereign immunity in those other rights and remedies that you may be pointing to. Counsel, let me, counsel, if I could ask you the, in terms of the first paragraph of subsection E, do you consider all of that a savings clause or just the first sentence? I think it's, I think the whole thing is a savings clause. I think the first sentence is, is addressed to one, to one way that one could try to, you know, some, a lawyer could try to say, no, you've granted a citizen's right in doing so, you took away some other right. And then the second sentence addresses another, another scenario. It doesn't. Am I, am I, am I correct? And I may not be, I thought the 11th circuit decision did not consider the second sentence a savings clause. The 11th circuit. I may have that confused with another case. No, I think you're right. The second, the 11th circuit's decision about 7604E says, we think there is a waiver of sovereign immunity in here, but it doesn't apply to this suit because it, which was seeking a relief indistinguishable from what North Carolina seeks here, because at the end of the day, it points back to 7418 and that defines the scope of the waiver. So even if, even if this is a fallback argument for the government here, even if 7604E has a waiver of sovereign immunity, our argument is, well, it's no broader than what's set forth in 7418, because that is more specific and, and E cross references to it at the end. And that's what the 11th circuit concluded in the Jacksonville case. So we think the threshold decision of, well, does it waive sovereign immunity at all? We think it does not. So we disagree with that little part of the 11th circuit's reasoning, but that court quickly went on and resolved the rest of the issue in a way we think is right. The, the, the other points we have made here that I think are worth, worth looking to briefly are, you know, the, the two cases from, from this circuit, the Virginia and North Carolina cases do address 7604E. And in doing so, while it doesn't address this issue precisely, I want to be clear about that. I think reading the opinions, I think one fair takeaway from them is that the court is not reading 7604E in those, in those opinions as overriding other principles like, like sovereign immunity that, that might apply because of their independent standing. Counsel, am I correct that if, if this case, instead of involving a backward looking or what the Supreme Court termed a punitive sanction, it was forward looking and what they call a coercive sanction, you would agree that a coercive sanction is permitted? Yes. There is a waiver of sovereign immunity for that. Yes. So, it, 7418 waived sovereign immunity for a coercive sanction. So, for example, if the Marine Air Station here was still using coal and, and North Carolina had an argument that it needed to make the conversion that it's already made and was seeking an injunction requiring the, the boiler to convert to natural gas. Then that would clearly fall within the waiver of sovereign immunity in 7418 and North Carolina would be able to secure that. But with respect to the violation is over, it's in the past and we're seeking, we're seeking a punishment, a damages award that punishes the Marine base for that. That doesn't fall within the waiver in 7418 and it's, and that, I think it's just that issue is resolved and controlled by Department of Energy versus Ohio. I think I have a little time left, but I feel like I've hit all my key points. So, unless the court has any further questions, I would just, just close by, by noting, you know, we think the removal here is, is, makes sense. The practical matter is supported by the removal construction, the removal statute and with respect to sovereign immunity, the state at most has, has identified some ambiguity in 7604E, but that ambiguity doesn't, doesn't get them over the finish line. They need to show an unequivocal waiver and 7604E just doesn't do that.  Thank you. Did you reserve some time for a bit, Belna? We're going to limit you to the time, though, that you reserved. Okay. Yes, Your Honor. I'd like to dive immediately into section 7604E and the question of whether that's a clear waiver of sovereign immunity. At a high level, when the court is trying to figure out whether sovereign immunity has been waived, it asks both whether the United States has consented to be sued and what remedies are available. And the answer to both of those questions are clear in the text of 7604E. It makes it very clear that the United States is an appropriate defendant that can be sued by a state. And it says that any remedy or sanction should be available. I did not hear Mr. Lundman make any argument that the word remedy would not ordinarily be understood to include punitive fines. And we think that text is crystal clear. To some extent, though, I think the removal being upheld wouldn't include that at all. The removal being upheld would send this case back to state court where the United States could make its same argument about sovereign immunity and contend that it is immune from any punitive fines. But yes, Your Honor, it would preclude this court from coming to a conclusion on that particular issue. I do think to some extent this focus on the specific provisions 7604 and 7418 misses the broader picture because, of course, the general question that this court needs to answer is whether Congress intended for punitive fines to be available under the Clean Air Act broadly against the federal government. And I think if the court expands its lens just a bit, the answer to that question is clear. We, of course, think there are clear signals in these two provisions, but there are additional signals in other portions of the Clean Air Act. And I would direct the court both to subsection A of this citizen suit provision, which makes clear that the United States can be subject to civil penalties in suits brought both by private citizens and states. So that would, of course, require this court to conclude that private citizens can impose punitive fines against the federal government, but that states cannot. And second, I would direct the court to 42 U.S.C. 7420, 7420, the noncompliance penalty provision, which also makes clear that states can pursue punitive penalties and punitive fines against the federal government. I would also note that in 1977, when Congress made these additional amendments, it also expanded the definition of the word person to include the federal government. Previously, it had only included private citizens, corporations and states, and Congress deliberately expanded it to include federal agencies and officers. We would submit that the court did that or that Congress did that to make perfectly clear that the United States was subject to all of the fines and sanctions and remedies that are listed throughout the Clean Air Act. So all of these different aspects of the statutory scheme compiled together, we think, make it crystal clear that Congress was contemplating that the United States would be subject to punitive fines. And, of course, if the clear text of those provisions were not already enough, this court can look to the legislative history, which is quite distinct and clear in this particular case. And if I may, I'd read briefly from that. Congress said in amending the Clean Air Act in 1977, the amendment is also intended to resolve any question about the sanctions to which noncompliant federal agencies, facilities, officers, employees or agents may be subject. The applicable sanctions are to be the same for federal facilities as for privately owned pollution sources. This means that federal facilities and agencies may be subject to injunctive relief, to civil or criminal penalties and to delayed compliance penalties. So, of course, that makes clear that Congress believed it was even subjecting the federal government to criminal penalties, which we would argue obviously suggests that the punitive fines the state wishes to impose would would be included as well. I also finally would like to note that, of course, Congress made clear both in 7604 and 7418 its intention that the federal government not have special status under the Clean Air Act and that it be subject to the same requirements, sanctions, remedies as a private citizen. And there's no question that private citizens can be subjected to the kind of punitive fines that the state has sought to impose here. The punitive fines are available both under federal and state law. So the state would submit that the federal government is not entitled to a special status and that this court should avoid stripping the state of a very important tool in its toolkit for ensuring compliance with the state's air pollution laws and ensuring that the state's air quality standards are met both by private citizens and federal facilities. Thank you, Your Honors. Thank you very much. We appreciate it. But DRU is on both councils and we will take the case under advisement.
judges: Diana Gribbon Motz, Robert B. King, G. Steven Agee